**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| AVANT LOCATION TECHNOLOGIES LLC, <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Civil Action No. 2:24-CV-0757-JRG (LEAD CASE) <br><br> **JURY TRIAL DEMANDED** <br><br> ██████████████ |

**DEFENDANT APPLE INC.'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF ISSUES ................................................................................. 2

III.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................... 3

    A.   The Parties ................................................................................................. 3

    B.   The Complaint ........................................................................................... 4

        1.   Asserted patents .............................................................................. 4

        2.   Venue allegations ............................................................................ 4

    C.   Apple's Relationship With Best Buy ....................................................... 5

    D.   Apple's California-Based Witnesses And Evidence ................................ 8

IV.   LEGAL STANDARD .......................................................................................... 8

V.    ARGUMENT ........................................................................................................ 9

    A.   The Complaint Should Be Dismissed In Its Entirety For Improper Venue. ........... 9

        1.   Avant has not pleaded facts showing any regular and established place of business "of the defendant" in this District. ............................... 10

            a.   Apple does not own or lease any space in Best Buy's stores, or otherwise exercise possession or control over Best Buy's stores. ........................ 11

            b.   Apple does not require its employees to live in the District or to store materials to be distributed or sold within the District. .............................. 16

            c.   Apple does not hold out Best Buy's stores as places of business of Apple. ................................. 17

            d.   Apple's places of business in other venues differ significantly from Best Buy's stores. ....................... 20

        2.   Avant's complaint should be dismissed. .............................. 21

    B.   If Not Dismissed Outright, The Court Should Transfer This Case To The Northern District Of California. ............................. 22

1.    Avant could have brought this suit in the Northern District of
California.................................................................................. 23

2.    The private interest factors overwhelmingly favor transfer...................... 23

   a.    The cost of attendance for willing witnesses strongly favors
   transfer........................................................................... 23

   b.    The relative ease of access to sources of proof strongly
   favors transfer. ............................................................... 25

   c.    Compulsory process to secure the attendance of witnesses is
   neutral or else may weigh in favor of transfer. ................................ 27

   d.    Any remaining "practical problems" are neutral........................... 28

3.    The public interest factors overwhelmingly favor transfer....................... 28

   a.    The local interest factor strongly favors transfer........................... 28

   b.    Familiarity with governing law and conflicts of law factors
   are neutral. ...................................................................... 29

   c.    The court congestion factor is neutral ........................................... 29

VI.    CONCLUSION.................................................................................... 30

# TABLE OF AUTHORITIES

Page(s)

## CASES

*4WEB, Inc. v. NuVasive, Inc.*,
No. 23-cv-00192-JRG, 2024 WL 1932416 (E.D. Tex. May 2, 2024) ..................14, 16, 18

*AGIS Software Development LLC v. Google LLC*,
No. 19-cv-00361-JRG, 2022 WL 1511757 (E.D. Tex. May 12, 2022) ...........................20

*AlexSam, Inc. v. Simon Prop. Grp. (Texas), L.P.*,
No. 19-cv-331-JRG, 2021 WL 9816147 (E.D. Tex. Aug. 19, 2021) ............................8, 9

*AptusTech LLC v. Trimfoot Co.*,
No. 19-cv-00133-ALM, 2020 WL 1190070 (E.D. Tex. Mar. 12, 2020).........................18

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
No. 17-cv-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018)..................10, 21

*Fractus, S.A. v. ZTE Corp.*,
No. 17-cv-00561-JRG, 2018 WL 11363369 (E.D. Tex. Sept. 28, 2018) .........................15

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020)......................................................25, 27, 28, 29

*In re Apple Inc.*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ....................................24, 25

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ...........................................................................9, 28

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)................................................................ *passim*

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)..........................................................23, 25, 27

*In re Google, Inc.*,
58 F.4th 1379 (Fed. Cir. 2023) .........................................................................29, 30

*In re Google Inc.*,
No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) .............................................23

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020).................................................................10, 13

*In re Honeywell Int'l Inc.*,
No. 2023-152, 2024 WL 302397 (Fed. Cir. Jan. 26, 2024) .........................................24, 30

iii

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) ................................................................ *passim*

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011)...............................................................29

*In re Netflix, Inc.*,
  No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) ..............................24

*In re Samsung Elecs. Co.*,
  2 F.4th 1371 (Fed. Cir. 2021) ............................................................27, 28, 29

*In re Samsung Elecs. Co.*,
  No. 2023-146, 2023 WL 8642711 (Fed. Cir. Dec. 2023)................................30

*In re TikTok, Inc.*,
  85 F.4th 352 (5th Cir. 2023) ................................................9, 22, 25, 26

*In re TracFone Wireless, Inc.*,
  848 F. App'x 899 (Fed. Cir. 2021) ........................................................28

*In re TS Tech. USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) (en banc)...............................................29

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ......................................................22, 24

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ......................................................9, 22

*In re Volkswagen Grp. of Am., Inc.*,
  28 F.4th 1203 (Fed. Cir. 2022) ................................................13, 20

*In re ZTE (USA) Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018)............................................................10

*International Techs. & Sys. Corp. v. Samsung Elecs. Co.*,
  No. 17-cv-1748-DOC, 2018 WL 4963129 (C.D. Cal. June 22, 2018) ........................11, 19

*IOT Innovations LLC v. Monitronics Int'l, Inc.*,
  No. 2:22-CV-0432- JRG-RSP, 2023 WL 6300560
  (E.D. Tex. Sept. 27, 2023) ..................................................................17

*IOT Innovations LLC v. Monitronics Int'l, Inc.*,
  No. 2:22-CV-0432- JRG-RSP,
  2023 WL 6318049 (E.D. Tex. Sept. 11, 2023) ..................................................17

iv

*Seville v. Maersk Line, Ltd.*,
    53 F.4th 890 (5th Cir. 2022) ................................................................21

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ..............................................................................9

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    581 U.S. 258 (2017) ........................................................................9, 23

*Tiare Tech., Inc. v. Dine Brands Glob., Inc.*,
    No. 22-cv-490-JRG-RSP, 2024 WL 607407 (E.D. Tex. Jan. 4, 2024) ..............8

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
    No. 17-cv-00170-RWS, 2018 WL 4560742 (E.D. Tex. Mar. 9, 2018) ............16

*Uniloc USA, Inc. v. Nutanix, Inc.*,
    No. 17-cv-00174-JRG, 2017 WL 11527109 (E.D. Tex. Dec. 6, 2017) .......16, 17

*Westech Aerosol Corp. v. 3M Co.*,
    927 F.3d 1378 (Fed. Cir. 2019) ...........................................................22

## STATUTES, RULES, AND REGULATIONS

28 U.S.C. § 1391(c) ..................................................................................9

28 U.S.C. § 1400(b) ............................................................................ *passim*

28 U.S.C. § 1404(a) ............................................................................ *passim*

28 U.S.C. § 1406(a) ...............................................................................1, 2

Fed. R. Civ. P. 12(b)(3) ...........................................................................1, 2

Fed. R. Civ. P. 45(c) ................................................................................27

## I.    INTRODUCTION

This case has no meaningful connection to the Eastern District of Texas, and it should be dismissed for lack of venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) or, alternatively, transferred to the Northern District of California under 28 U.S.C. § 1404(a).

With respect to venue, Defendant Apple Inc. ("Apple") neither resides nor maintains a regular and established place of business in this District as required under 28 U.S.C. § 1400(b). Plaintiff Avant Location Technologies LLC's ("Avant") venue allegations instead focus on third-party retailer Best Buy, which—unlike Apple—has stores in the Eastern District of Texas. But it is well established that the presence of third-party retailers does not make venue proper as to a supplier like Apple. Avant alleges that Best Buy stores in the District contain "Apple Shops," which are areas for displaying Apple's products on tables and shelves designed by Apple. But Apple does not exercise possession or control over those Apple Shops or any other areas within Best Buy stores. Apple does not own or lease any space in Best Buy's stores. Best Buy determines where the Apple Shop is located within Best Buy's stores. Best Buy owns all the merchandise, demonstration units, and fixtures in each Apple Shop. Best Buy sets the prices for the Apple products that it sells and staffs the Apple Shop with Best Buy employees who complete all sales transactions. And while Apple has a handful of employees who demonstrate and answer questions about Apple's products within Best Buy's stores in this District, that does not show Apple's possession or control over any space within Best Buy's stores. On the contrary, those Apple employees do not have access to cash registers or locked inventory within Best Buy's stores.

If not dismissed for improper venue, the case at a minimum should be transferred to the Northern District of California under 28 U.S.C. § 1404(a) because the Northern District of California is clearly more convenient for the parties and witnesses than the Eastern District of

Texas. Apple resides in the Northern District of California, and the accused technology was developed by Apple engineers located in that district. Apple's witnesses and documents are located in the Northern District of California, and to Apple's knowledge, there are no relevant witnesses or documents located in this District. The Northern District of California is also convenient for Avant, which is a shell corporation ultimately owned by a California corporation whose sole owner resides in the Northern District of California. The technology at issue has no connection to this District, and the asserted patents were developed by a company in Spain. The only apparent connection that this case has to the Eastern District of Texas is Avant's incorporation at an address in the District shortly before Avant began filing lawsuits. But Avant's litigation-driven presence in this District is not relevant to the transfer analysis. *See, e.g.*, *In re Juniper Networks, Inc.,* 14 F.4th 1313, 1320-21 (Fed. Cir. 2021) ("[L]ittle or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation.") (citation omitted). Given the close connection of this case to the Northern District of California and the lack of any real connection to this District, the private and public interest factors overwhelmingly favor transfer, and this is precisely the type of case that should be transferred under § 1404(a).

## II.    STATEMENT OF ISSUES

1.    Whether the Court should dismiss this case under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a) because Avant has not established that venue is proper in the Eastern District of Texas under 28 U.S.C. § 1400(b).

2.    In the alternative, whether the Court should transfer this case to the Northern District of California for the convenience of the parties and witnesses under 28 U.S.C. § 1404(a).

2

III.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

A.    **The Parties**

Apple is a California corporation.  Dkt. 1 ¶ 2.  Apple designs, manufactures, and sells a wide range of consumer products that include a feature called "Find My," which helps users locate lost items.  Avant has accused Apple products with the "Find My" feature and related functionality in Apple's Home app of infringing seven patents.  *Id.* ¶¶ 32-210.  Apple sells its products through its website, directly to consumers in Apple Stores, and through third-party retailers and distributors.  Apple has not had any Apple Stores in the Eastern District of Texas since 2019.  Declaration of Stephanie Dockendorf ("Dockendorf Decl.") ¶ 14.

According to the complaint, Avant is a Texas limited liability company with a principal place of business in Marshall, Texas.  Dkt. 1 ¶ 1.  Avant is owned through a series of entities that trace back to Avant's true owner in the Northern District of California.  Public records indicate that Avant was formed on May 4, 2023.  Ex. 1 at 1.[1]  Avant's certificate of formation identifies Anjay Technology Partners LLC ("Anjay Technology") as the company's sole managing member.  *Id*.  According to public records, Anjay Technology is also a Texas company with a principal place of business at the same street address in Marshall as Avant.  Dkt. 1 ¶ 1; Ex. 2.  Anjay Technology's sole managing member is Anjay Venture Partners ("Anjay Ventures"), which is a California company located in Cupertino, California.  Exs. 2, 3.  Deepak Sharma—the managing director of both Avant and Anjay Technology, and the manager and CEO of Anjay Ventures—also resides in Cupertino.  Exs. 2, 3, 4.  Avant filed its first lawsuit in this District shortly after it was incorporated.  *See Avant Location Techs. LLC v. Ecobee Techs. ULC*, No. 2:23-cv-354-JRG (E.D. Tex.) (filed July 31, 2023).  Avant does not appear to engage in any business other than filing lawsuits.

---

[1] "Ex. __" refers to the exhibits to the declaration of Andrew J. Danford filed with this motion.

### B.    The Complaint

#### 1.    Asserted patents

On September 13, 2024, Avant sued Apple for infringement of seven patents.  Dkt. 1 ¶¶ 12-20, 32-210.  Avant alleges that these patents relate to "a method for monitoring a mobile station presence in a special area, and to a mobile system, a server, a radio transmitting device, and a mobile station suitable for carrying out such a method."  *Id.* ¶¶ 21-28.  Avant appears to have had no involvement in the development of the purported inventions claimed in the asserted patents, which were originally assigned to a Spanish entity called Afirma Consulting & Technologies, S.L.  *See* Dkts. 1-1 to 1-7; Ex. 5 at 14.  According to the Patent Office's records, Avant acquired the asserted patents through an assignment agreement executed on May 19, 2023.  *See* Ex. 5.

#### 2.    Venue allegations

Avant's venue allegations identify no physical location within this District that is a regular and established place of business of Apple.  *See* Dkt. 1 ¶¶ 2-10.  Instead, the complaint relies entirely on "Best Buy locations in this District where Apple products are sold directly to customers."  *Id.* ¶ 2.  Avant alleges that "certain Best Buy locations within this District contain Apple Shops," which Apple's website describes as "Apple-designed outlets located within select Apple resellers and other retail stores."  *Id.* ¶ 3.  However, as the complaint recognizes, these Apple Shops are part of Best Buy's stores and are not Apple stores.  *Id.* ¶ 4.  For example, the complaint quotes from Best Buy's website that Apple Shops are "[n]ow open at a Best Buy near you" and that the Apple Shop is "our [*i.e.*, Best Buy's] store-within-a store for all things Apple."  *Id.* ¶ 5.  Apple does not lease or own any space in Best Buy's stores, Dockendorf Decl. ¶ 7, and the complaint does not allege otherwise.  Avant asserts that Apple exercises control over Best Buy stores by "dictating the look and feel of Apple Shops, including the furniture, display fixtures, and branding" and "permitting only Apple products to be sold in Apple Shops."  Dkt. 1 ¶ 7.  But, at

most, those allegations show Apple's control over its trade dress and brand; they do not show Apple's control over Best Buy's stores, which are owned and operated solely by Best Buy.

Avant further alleges that Apple's website states that "[m]any [Apple Shops] are staffed with Apple Solutions Consultants – trained Apple employees who can help you find the best solution." Dkt. 1 ¶ 3. Avant alleges that these Apple employees "provide users and customers in this District with help connecting them with Apple products, find Apple products that meet their needs, and engage in the offer for sale of Apple's products from these locations." *Id.* Avant further alleges that Apple requires that Best Buy permit these Apple employees to be regularly present within Best Buy's stores "to assist in sales and customer support." *Id.* ¶ 7. But Avant does not allege that Apple's employees stock inventory, that they complete sales transactions, or that they exercise any control over Apple Shops in Best Buy stores or the Best Buy stores themselves.

Finally, the complaint alleges that "certain Best Buy locations, including those located in this District, are 'Apple Authorized Service Providers,'" where Apple products can be repaired. Dkt. 1 ¶ 8. The material cited in the complaint, however, makes clear that Best Buy employees, called "Geek Squad Agents," perform those services. *Id.* Indeed, the quoted advertising from Best Buy repeatedly seeks to reassure customers precisely because the repairs are performed at Best Buy by Best Buy employees instead of at an Apple location by Apple employees. *See id.* ("Our [Geek Squad®] Agents are Apple-trained, so you can trust us with all your Apple devices, no matter where you bought them."). Apple's website is also clear that those services are performed by Best Buy and thus seeks to reassure customers of the quality of work performed by Best Buy. *Id.* ("[Y]ou get the same professionalism and quality of repair you'd expect from Apple.").

### C.    Apple's Relationship With Best Buy

Apple and Best Buy entered into a █████████████████████████████████

████████████████████████████████████████████████████████████████████

5

██████████████████████████████████████████████████

████████ Ex. 6. Nothing in the █████████████ provides Apple control over the Best Buy stores or the Apple Shops within them. *See generally* Exs. 6-11.

Apple and Best Buy also entered into ████████████████████████████████

██████████████████████████████████████████████████

████████████████████ Ex. 7 § ██ Avant's venue allegations depend entirely on this █████

███████████████████████ or "Apple Shops" in Best Buy's stores. *See* Dkt. 1 ¶ 3.

As reflected in that ████████████████████████, in practice, Apple Shops are part of Best Buy's stores and are owned and operated solely by Best Buy. The Apple Shops provide a dedicated space with Apple's logo and branding on shelving and display cases where Best Buy sells Apple products. *See* Dockendorf Decl. ¶ 5. Best Buy determines where the Apple Shop is located within Best Buy's stores. *Id.* ¶ 9; *see* Ex. 7 §§ ████████████████████████████

██████████████████████████████████████████████████

████████ Best Buy owns all merchandise, demonstration units, and fixtures in each Apple Shop. Ex. 7 §§ █████ Ex. 6 § ██; Dockendorf Decl. ¶¶ 8, 12. Best Buy decides what Apple products to order and how to allocate that inventory to individual stores. Declaration of Jack Leslie ("Leslie Decl.") ¶¶ 3-4; *see also* Ex. 6 § ██ Title passes to Best Buy upon shipment from Apple's shipping location. Leslie Decl. ¶ 5; Ex. 6 § ██. Best Buy also sets the prices for the products sold in the Apple Shop, manages the inventory, establishes the hours of operation, and staffs its store (including the Apple Shop) with Best Buy employees who complete all sales transactions. Declaration of Stephanie Calhoun Jemmings ("Calhoun Jemmings Decl.") ¶¶ 8-11, 13; Dockendorf Decl. ¶ 12; *see also* Ex. 7 § ██

██████████████████████████████████████████████████

████████████████████████████████████████████████████████. *See, e.g.*, Ex. 7 §§ ██████. Best Buy reviews and authorizes any contractor who installs the fixtures for the Apple Shops in Best Buy's stores. Dockendorf Decl. ¶ 10. Best Buy ████████████████████████████████████ ████████████████████████████████, and Best Buy can close its stores, including those with Apple Shops, without consulting Apple—as it has done dozens of times in the past three years. Dockendorf Decl. ¶ 13.

Before November 6, 2024, no more than ten Apple employees worked within Best Buy's stores in the Eastern District of Texas, with only one or two Apple employees at any particular Best Buy location. Calhoun Jemmings Decl. ¶ 5. These Apple employees were not present at all times that Best Buy's stores were open; most worked only Friday through Sunday. *Id.* ¶ 5. None of these Apple employees had a role in the management or operation of Best Buy's stores. *Id.* ¶ 4. Nor did they complete any sales transactions, or have access to the store's cash registers, locked inventory, or Best Buy's computer systems for checking inventory. *Id.* ¶¶ 8-10. Instead, these Apple employees engaged with Best Buy's employees and customers to educate them about Apple's products, advocated for Apple's brand, and helped customers find the Apple product that best suits their needs. *Id.* ¶ 4; *see* Ex. 10 § ████ Best Buy could have removed Apple's employees from its stores without consulting Apple. Calhoun Jemmings Decl. ¶ 11. Effective November 6, 2024, Apple restructured its staffing for employees within third-party retailers nationwide. *Id.* ¶¶ 4, 12. As part of those changes, Apple employees are not present in Best Buy stores in the Eastern District of Texas on a fixed schedule; the timing and duration of the employees' visits varies from week to week, and no more than a single Apple employee visits any particular store. *Id.* ¶ 12. These Apple employees have the same responsibilities that Apple employees had under the staffing structure prior to November 6, 2024. *Id.* ¶ 13. Apple does not require its employees

to live within the District, and some travel outside the District for their job. *Id.* ¶ 14.

### D. Apple's California-Based Witnesses And Evidence

The "Find My" feature and the related functionality of the Home app that Avant accuses of infringement were developed by a team of Apple engineers primarily located in Cupertino, California. Declaration of Siva Ganesh Movva ("Movva Decl.") ¶¶ 3-5; Declaration of Rick Warren ("Warren Decl.") ¶¶ 3-5. ███████████████████████████████████

███████████████████████████████████ Movva Decl. ¶¶ 3-6; Warren Decl. ¶¶ 3-6. ███████

███████████████████████████████████████████████

███████████████████████████████████████ Movva Decl. ¶¶ 5-6; Warren Decl. ¶¶ 5-6. In addition, as a company headquartered in California, other potentially relevant documents and witnesses—for example, relating to Apple's marketing, finances, and patent licenses—are located in the Northern District of California, and not in this District. Declaration of Drew Williams ("Williams Decl.") ¶¶ 4-6; Declaration of Catherine Spevak ("Spevak Decl.") ¶¶ 3-5; Declaration of Jacob Anderson ("Anderson Decl.") ¶¶ 4-5.

## IV. LEGAL STANDARD

On a motion to dismiss for improper venue, "the burden of sustaining venue lies with the plaintiff." *Tiare Tech., Inc. v. Dine Brands Glob., Inc.*, No. 22-cv-490-JRG-RSP, 2024 WL 607407, at *3 (E.D. Tex. Jan. 4, 2024) (citation omitted). "A plaintiff may carry its burden by presenting facts, taken as true, that establish venue." *Id.* "In determining whether venue is proper, the Court may look beyond the complaint to evidence submitted by the parties." *Id.* (citation omitted). While the Court must accept well-pleaded allegations as true and resolve all conflicts in favor of the plaintiff, the Court "need not credit conclusory allegations." *AlexSam, Inc. v. Simon Prop. Grp. (Texas), L.P.*, No. 19-cv-331-JRG, 2021 WL 9816147, at *1 (E.D. Tex. Aug. 19, 2021). "When unsubstantiated allegations are controverted by affidavit or declaration, the affidavit or

declaration trumps the allegation." *Id.* (citation omitted).

To succeed on a motion for change of venue for convenience, the moving party "must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*") (alteration in original); *see also In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (placing burden on movant "to 'adduce evidence and arguments'" supporting transfer) (citation omitted). Though the district court has discretion to grant or deny the motion to transfer, its analysis must be "rooted in record evidence." *In re TikTok, Inc.*, 85 F.4th 352, 360 (5th Cir. 2023); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

## V.    ARGUMENT

### A.    The Complaint Should Be Dismissed In Its Entirety For Improper Venue.

The "sole and exclusive provision controlling venue in patent infringement actions" is 28 U.S.C. § 1400(b). *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017) (citation omitted). Section 1400(b) is more restrictive than the general venue provisions of 28 U.S.C. § 1391(c) and limits venue in patent cases to "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Under § 1400(b), a defendant "resides" only in its state of incorporation. *TC Heartland*, 581 U.S. at 268. As Avant acknowledges (Dkt. 1 ¶ 2), Apple is a California corporation and does not reside in the Eastern District of Texas. Avant therefore relies exclusively on the second prong of § 1400(b) for venue—Apple's purported "regular and established place of business."

The venue analysis in this case turns on whether Apple "has a regular and established place of business" in the District. The Federal Circuit has identified "three general requirements" relevant to this analysis: "(1) there must a be physical place in the district; (2) it must be a regular

and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). It is the plaintiff's burden to show that these requirements are met. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). And "the Supreme Court has cautioned against a broad reading of the venue statute" so as to give effect to "the clear intent of Congress in enacting the statute to restrict venue." *In re Google LLC*, 949 F.3d 1338, 1346-1347 (Fed. Cir. 2020) (collecting cases). If any of the three requirements for demonstrating a regular and established place of business of the defendant is not met, "venue is improper under § 1400(b)." *Cray*, 871 F.3d at 1360.

### 1. Avant has not pleaded facts showing any regular and established place of business "of the defendant" in this District.

Apple has no regular and established place of business in the Eastern District of Texas, and Avant has not alleged facts sufficient to carry its burden on this issue. The statutory requirement that "'the regular and established place of business' must be 'the place of the defendant'" is dispositive. *Cray*, 871 F.3d at 1363.

Apple has not had any stores in the District for over four years. Dockendorf Decl. ¶ 14. The complaint identifies no physical places of business of Apple in the District and instead relies exclusively on "Best Buy locations in this District" to plead venue, alleging these in turn constitute "places of business of Apple." Dkt. 1 ¶¶ 2, 7. But as the complaint states, those are "Best Buy locations" (*id.*)—not Apple locations. It is well established that "a distributor's place of business cannot establish venue for its supplier" under § 1400(b). *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 17-cv-728-WCB-RSP, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018) (collecting cases). Accepting Avant's position that third-party retailers like Best Buy may establish venue for product manufacturers "would largely overturn the decisions in *TC Heartland* and *Cray*, converting the test for venue in patent cases into one similar to the test for personal jurisdiction,"

*id.* at \*3, which is exactly what the Federal Circuit has warned against, *see Cray*, 871 F.3d at 1361 ("Courts should … be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases.").

The Federal Circuit has provided a non-exhaustive list of "considerations" for evaluating whether a location is "the place of the defendant." Those considerations include (1) "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place"; (2) "whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place"; (3) "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself"; and (4) "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues." *Cray*, 871 F.3d at 1363-1364.

These considerations overwhelmingly demonstrate that Best Buy's stores are not places of business of Apple. Indeed, another court has already rejected the basis for Avant's venue allegations—*i.e.*, that Best Buy stores that sold the defendant Samsung's products in a Samsung-branded section of the store qualified as "the place of the defendant." *See International Techs. & Sys. Corp. v. Samsung Elecs. Co.*, No. 17-cv-1748-DOC, 2018 WL 4963129, at \*7 (C.D. Cal. June 22, 2018). This Court should reach the same conclusion here.

### a. Apple does not own or lease any space in Best Buy's stores, or otherwise exercise possession or control over Best Buy's stores.

The physical space within Best Buy's stores, including where the accused products are sold, is owned and controlled by Best Buy. Apple does not own or lease space in Best Buy's

stores.  Dockendorf Decl. ¶ 7.  All fixtures and merchandise within those stores are Best Buy's property, and Best Buy controls the process for installing any fixtures in its stores, including the ultimate decision as to where to locate those fixtures within its stores.  *Id.* ¶¶ 8-12; Ex. 7 § ██

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████  As a result, Best Buy bears full responsibility for losses within its stores (e.g., theft or personal injury).  Dockendorf Decl. ¶ 8; Ex. 7 §§ ██████

██████████████████████████████████████████████████████████████

██████████████████  Because Apple has no ownership or control over Best Buy's stores, Best Buy can close its stores permanently without consulting Apple, including those with Apple Shops.  Dockendorf Decl. ¶ 13.  Best Buy has done so 70 within the last three years alone, including one location (Lufkin) in the District.  *Id.*

Apple also does not exercise control over operations at Best Buy's stores.  Apple does not manage the inventory within Best Buy's stores.  Leslie Decl. ¶ 3.  When Best Buy orders Apple's products, Best Buy typically does not identify a particular store to receive that inventory, and Apple ships its products to one of six Best Buy distribution centers—none of which is located in this District.  *Id.*  Best Buy—not Apple—is then responsible for shipping Apple's products from its distribution centers to Best Buy's stores in this District.  *Id.*  Even when Best Buy occasionally asks Apple to ship products to a Best Buy store directly, those shipments are initiated at Best Buy's request and become Best Buy's property as soon as they leave Apple's warehouses.  *Id.* ¶¶ 4-5; Ex. 6 § ██  Best Buy provides security for its stores.  Dockendorf Decl. ¶ 8.  Best Buy sets the

hours of operation for its stores and the prices of the Apple products that it sells.  *Id.* ¶ 12; Calhoun Jemmings Decl. ¶¶ 8, 11; *see also* Ex. 7 § ███.  And Apple does not complete any sales transactions or repair any products at Best Buy's stores.  Calhoun Jemmings Decl. ¶¶ 8, 10.

Avant alleges that there are "Apple-designed outlets" within Best Buy's stores called "Apple Shops," which Avant asserts that Apple exercises control over by "dictating the look and feel" and "permitting only Apple products to be sold [there]."  Dkt. 1 ¶¶ 3, 7.  But those allegations simply reflect Apple's control over its trade dress and brand, not control over Best Buy's stores sufficient for venue.  *See, e.g.*, *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1211 (Fed. Cir. 2022) ("*Volkswagen III*") (setting standards for store "appearance and use of signs and brand logos" insufficient for venue).  While Apple provides standardized Apple-branded fixtures that third-party retailers can use to display Apple products, Dockendorf Decl. ¶ 4, those Apple-branded fixtures are not specific to Best Buy or any particular Best Buy location.  Apple has requirements for where those Apple-branded fixtures can be installed to ensure that retailers use Apple-branded fixtures in a consistent manner.  *Id.* ¶ 9.  However, it is ultimately up to Best Buy to identify a location within its stores to install those fixtures using contractors authorized by Best Buy.  *Id.* ¶¶ 9-10; *see* Ex. 7 §§ ███.  Once installed, those fixtures are Best Buy's property that Best Buy controls.  Dockendorf Decl. ¶ 8; Ex. 7 § ███████████████████  Ex. 8 at ████████████████████  While Apple provides routine maintenance (*e.g.*, to repair a damaged display case), Best Buy requires that Apple use only Best Buy-approved vendors to do that work.  Dockendorf Decl. ¶ 11.  In any event, such maintenance does not constitute the "conduct of business in the sense of production, storage, transport, and exchange of goods or services" required under the venue statute.  *Google*, 949 F.3d at 1347.

Avant also alleges that Apple exercises control because Apple requires Best Buy to permit

Apple employees called "Apple Solutions Consultants" to work within Best Buy's stores in the District "to assist in sales and customer support." Dkt. 1 ¶¶ 3, 7. But the mere presence of Apple employees within the District does not satisfy the statutory requirements for venue, which focus on control over a physical location, not on who is at that location. *See 4WEB, Inc. v. NuVasive, Inc.*, No. 23-cv-00192-JRG, 2024 WL 1932416, at *6-10 (E.D. Tex. May 2, 2024). For example, this Court recently found that venue was not proper in *4WEB*, even though plaintiff 4WEB alleged that defendant NuVasive's employees conducted business "including sales, marketing, sales operations, logistics, regulatory, quality control, research and development (when surgeons are engaged as consultants), training and education and finance" at various hospitals and surgery centers in the District and had to live close enough to commute to those hospitals and surgery centers. 2024 WL 1932416, at *1-2. The court reasoned that "NuVasive (1) does not own or lease any place in this District, (2) has not represented that it has a place of business in this District, and (3) conducts its business in San Diego, California." *Id.* at *3.

Venue is improper here for the same reason as in *4WEB*. The complaint contains no allegations establishing that Apple or its employees exercise possession or control over Best Buy's stores, and if anything, the actual role of these employees reinforces Apple's lack of possession or control over those stores. *See* Dkt. 1 ¶¶ 8-9. Unlike Nuvasive's employees in *4WEBB,* No. 23-cv-00192-JRG, 2024 WL 1932416, at *4, Apple's employees do not control even the Apple inventory that is sold at the Best Buy stores in this District. Calhoun Jemmings Decl. ¶¶ 9, 13. The Apple employees here are only "occasional[ly]" present within Best Buy stores and necessarily "transient," *4WEBB,* No. 23-cv-00192-JRG, 2024 WL 1932416, at *2, because their presence within the Best Buy stores in this District is at the whim of Best Buy, not Apple. *See* Calhoun Jemmings Decl. ¶ 11.

14

At the time the complaint was filed, there were not more than ten Apple employees in Best Buy stores within the District—with only one or two Apple employees at any particular Best Buy location. Calhoun Jemmings Decl. ¶ 5. Those employees were not present at all times that Best Buy's stores were open; in fact, most worked only Friday through Sunday. *Id.* ¶ 5. Best Buy has also always had complete control over who can be present within its stores, and Best Buy had the right to remove Apple's employees from Best Buy's stores if Best Buy deemed it necessary. *Id.* ¶ 12. The limited and part-time presence of Apple employees alongside the larger and permanent presence of Best Buy's own employees underscores that Apple Shops are not a place of business of Apple. *See id.* ¶¶ 9-12; *Fractus, S.A. v. ZTE Corp.*, No. 17-cv-00561-JRG, 2018 WL 11363369, at *2 (E.D. Tex. Sept. 28, 2018) (holding that the presence of two of defendant's employees at a call center three to four days per week working from a visitor office space "not exclusively used" by defendant did not make the call center a place of the defendant).

Apple's employees have no role in the operation of Best Buy's stores. While at Best Buy, Apple's employees can provide information about Apple's products to prospective customers. Calhoun Jemmings Decl. ¶¶ 6, 13; *see also* Dkt. 1 ¶ 3 ("Many are staffed with Apple Solutions Consultants – trained Apple employees who can help you find the best solution."). But Apple's employees are not involved in the management or operation of Best Buy's stores, and they do not exercise any control over Best Buy's employees. Calhoun Jemmings Decl. ¶¶ 4, 7. Apple's employees do not complete any sale transactions with customers or even have access to cash registers. *Id.* ¶ 8. Apple's employees also do not manage inventory, set prices for Apple's products. ████████████████████████████████ *Id.* ¶¶ 8-9; *see also* Ex. 11 § ████████████████████████████████ ████████████████████████████ ). And Apple's employees do not perform

15

product repairs.  Calhoun Jemmings Decl. ¶ 10.  Best Buy's employees perform those functions exclusively (*id.* ¶¶ 4, 6-11), consistent with the fact that Best Buy's stores are places of business of Best Buy, not Apple.

This case thus presents the same issue as *4WEB* and is distinguishable from situations where this Court has found proper venue based on the defendant's exercise of ownership and control over a retail location.  For example, in *Tinnus Enterprises, LLC v. Telebrands Corp.*, the court found that venue properly lay in the district where defendant leased space on store shelves; held that space out as its own; and actively managed inventory at retail locations, including by paying agents "to monitor, clean, restock, and affix price signage."  No. 17-cv-00170-RWS, 2018 WL 4560742, at *5-6 (E.D. Tex. Mar. 9, 2018).  By contrast, Apple neither pays for space nor manages inventory at Best Buy's stores (Dockendorf Decl. ¶¶ 7, 12; Leslie Decl. ¶ 3), and the complaint does not allege otherwise.  Instead, Best Buy manages the inventory, ██████████████, and sets its prices.  Leslie Decl. ¶¶ 3-4; Calhoun Jemmings Decl. ¶¶ 8-11; Dockendorf Decl. ¶ 8; Ex. 7 § ██; Ex. 8 at ████████████████████████  Apple also identifies these Apple Shops as being part of and controlled by Best Buy.  *See supra* pp. 5-7, 11-12.  Because Apple does not own or exercise control over Apple Shops within Best Buy stores, the presence of Apple employees within those stores does not make them a place of business of Apple.  *4WEB*, 2024 WL 1932416, at *4.

### b. Apple does not require its employees to live in the District or to store materials to be distributed or sold within the District.

The second consideration outlined in *Cray* (*i.e.*, "whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed from that place," 871 F.3d at 1363) is primarily relevant to assessing whether an employee's home constitutes a place of business of the defendant.

16

*See, e.g.*, *Uniloc USA, Inc. v. Nutanix, Inc.*, No. 17-cv-00174-JRG, 2017 WL 11527109, at \*3-4 (E.D. Tex. Dec. 6, 2017) (addressing whether employees' homes are the defendants' places of business).  Avant has made no such allegation here.  *See* Dkt. 1 ¶¶ 2-9.  However, to the extent relevant, this factor favors finding venue improper.  Apple does not dictate that its employees live within the District.  Calhoun Jemmings Decl. ¶ 14.  Nor do Apple employees store materials to be distributed or sold at Best Buy's stores within the District.  *Id.* ¶ 6.  *Compare IOT Innovations LLC v. Monitronics Int'l, Inc.*, No. 2:22-CV-0432- JRG-RSP, 2023 WL 6318049, at \*4 (E.D. Tex. Sept. 11, 2023), *report and recommendation adopted*, 2023 WL 6300560 (E.D. Tex. Sept. 27, 2023) (finding venue was proper when defendant's employees "store a leased vehicle and tens of thousands of dollars of [defendant's] equipment at their homes ... [to] take[] directly to customer locations for installation and servicing" by those same employees).  Instead, Best Buy has always controlled and owned its inventory of Apple products, as well as the demonstration models of Apple products.  Calhoun Jemmings Decl. ¶¶ 6, 9; Ex. 6 §§ ███ Ex. 7 § ███.  To be sure, there are a handful of Apple employees who work within Best Buy stores in the District.  Calhoun Jemmings Decl. ¶¶ 5-13.  But the venue statute requires a place of business of the defendant, not merely the presence of the defendant's employees.  *Cray*, 871 F.3d at 1363.  As discussed above (pp. 11-16), Apple does not exercise sufficient possession or control over Best Buy's stores to make those stores a place of business of Apple.

### c.    Apple does not hold out Best Buy's stores as places of business of Apple.

Apple does not list Best Buy's stores as a place of business of Apple on Apple's website or on any signage associated with those stores.  Avant points to the store locator feature on Apple's website, which identifies Best Buy locations in the District that "contain Apple Shops" where Apple products are sold.  Dkt. 1 ¶ 4.  But as the screenshots included in the complaint show,

Apple's website clearly and unmistakably identifies those locations as third-party resellers (*e.g.*, "Best Buy - 0202"), not as locations of Apple. *Id.* The "Apple Shop" label does not mean the location is a place of business of Apple. Apple's website explains that Apple Shops are "located within select Apple resellers and other retail stores." *Id.* Cases in this District have squarely held that this type of website listing does not demonstrate that third-party retailer locations are places of business of the defendant. *See AptusTech LLC v. Trimfoot Co.*, No. 19-cv-00133-ALM, 2020 WL 1190070, at *4 (E.D. Tex. Mar. 12, 2020) ("[Defendant] listed stores within the district on its website under a 'store locator' tab. However, the locations all have the names of the independent retailers on them. The website listings do not indicate that they are [defendant's] stores. Thus, [defendant] does not attempt to hold these stores out as its own on its website.").

Best Buy's website reinforces that Apple Shops are part of Best Buy. The excerpt of Best Buy's website reproduced in the complaint states the Apple Shop is "[n]ow open at a Best Buy near you" and describes the Apple Shop as "our [i.e., Best Buy's] store-within-a store for all things Apple." Dkt. 1 ¶ 4. Apple Shops plainly are not a place of business of Apple when neither Apple nor Best Buy holds out those locations as places of Apple. *See Cray*, 871 F.3d at 1363 ("Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business."); *4WEB*, 2024 WL 1932416, at *3 (finding defendant's "surgeon locator tool" did not serve to ratify hospitals or surgery centers as place of defendant when it "explicitly states that [defendant] is not associated with any of the surgeons or hospitals on the locator"); *AptusTech*, 2020 WL 1190070, at *4 (finding venue improper including because defendant did not "hold these stores out as its own on its website," by listing "the names of the independent retailers" where customers can find defendant's goods).

While Avant relies upon the fact that Apple Shops within Best Buy's stores contain only

Apple products (Dkt. 1 ¶ 7), Best Buy also sells products of other manufacturers—including Apple competitors—within their own defined spaces within Best Buy stores.  Ex. 12 (Tyler Best Buy location offers "Windows Store," "Samsung Experience Shop," "LG Experience," and "Sony Experience" in addition to "Apple Shop" and others).  The fact that Best Buy organizes its merchandise by manufacturer does not indicate that Best Buy is a place of business of those manufacturers.  Third-party retailers commonly adopt this "store-within-a-store" model, designating areas within their stores as "shops" focused on a particular manufacturer's products, without transforming the third-party's store into a place of business of the manufacturer.  *See, e.g.*, *Int'l Techs.*, 2018 WL 4963129, at *8 (finding that Samsung's statements on its website that "experience Shops are 'installed in' Best Buy stores to showcase Samsung products to Best Buy customers" was "not sufficient to establish that Samsung holds the Experience Shops out as its own place of business").  Best Buy's use of Apple's branding simply indicates what products Best Buy is selling, and it is nothing at all like what *Cray* suggested might support venue, such as by placing the defendant's "name on a sign associated with or on the building itself."  871 F.3d at 1363-64.

Finally, statements on Best Buy's and Apple's websites about repairs of Apple products at Best Buy locations as an "Apple Authorized Service Provider" (Dkt. 1 ¶ 8) do not suggest that Best Buy's stores are places of business of Apple.  On the contrary, the quoted excerpts from Best Buy's website seek to allay concerns arising from the fact that these repairs are done by "our" (*i.e.*, Best Buy) employees, and are not occurring at an Apple location.  *Id*. (Best Buy's website: "Our Agents are Apple-trained, so you can trust us with all your Apple devices, no matter where you bought them."); *id.* (Best Buy's website: "Our Geek Squad® Agents are Apple-trained and use genuine Apple parts on every repair.").

Likewise, Apple's website assures customers that Best Buy provides Apple-quality repair

services.  Dkt. 1 ¶ 9 (Apple's website: "[Y]ou get the same professionalism and quality of repair you'd expect from Apple.").  Those assurances would be unnecessary if these Best Buy locations were a place of business of Apple.  Moreover, these allegations clearly recognizing that it is Best Buy employees providing repair services contrast sharply with *AGIS Software Development LLC v. Google LLC*, in which the court found venue because, among other things, Google held out itself as "the provider of repairs" and the third party performing the repairs was "acting behind the scenes" such that customers were "not even aware" of its existence.  No. 19-cv-00361-JRG, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022).

Nor is Best Buy's provision of "Apple-certified" repairs using Best Buy employees who are "Apple-trained and use genuine Apple parts" a basis for venue.  Dkt. 1 ¶¶ 8-9.  The Federal Circuit has squarely rejected that argument.  *See Volkswagen III*, 28 F.4th at 1211-12 (rejecting argument that car dealerships were place of business of distributor because warranty and maintenance work was consistent with distributor's quality specifications and performed by distributor-trained employees).

> **d.    Apple's places of business in other venues differ significantly from Best Buy's stores.**

In *Cray*, the Federal Circuit recognized that courts may also consider "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues."  871 F.3d at 1364.  This factor, too, indicates that venue is improper.  Outside this District, Apple has its own Apple Stores that operate completely differently from the Best Buy locations on which Avant's venue allegations rest.  For example, unlike Best Buy's stores where customers can cross-shop products made by numerous different manufacturers, Apple Stores provide an experience focused exclusively on Apple products and related accessories.  Dockendorf Decl. ¶ 15; *see* Ex. 7 §

██████████████████████████████████████████ §§ ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████  At Apple Stores, Apple leases the storefronts, owns the merchandise, controls the inventory, provides security, and sets the hours of operation—none of which Apple does at Best Buy's stores.  Dockendorf Decl. ¶ 15.  Moreover, unlike at Best Buy, Apple employees at Apple Stores themselves complete sales transactions, repair Apple products, and are present every day the store is open.  The comparison with Apple Stores outside the District thus reveals that Best Buy's stores in the District are "not really a place of business at all" for Apple.  *Cray*, 871 F.3d at 1364

\* \* \*

Taken together, these factors confirm that Best Buy is a third-party retailer that operates its own stores independently from Apple.  Best Buy's locations in the District do not make venue proper as to Apple, and Avant therefore has not carried its burden of establishing proper venue.

### 2.    Avant's complaint should be dismissed.

The appropriate remedy for Avant's failure to file this case in a proper venue is dismissal. This is not a case where Avant made an understandable mistake in filing in the wrong venue.  *See Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 896 (5th Cir. 2022) ("A district court might excuse this sort of mistake where plaintiff's attorney could not have reasonably anticipated the venue problem.").  Other than the fact that Avant purportedly incorporated at an address in this District (Dkt. 1 ¶ 1), this case lacks any connection to this District.  *See infra* pp. 22-25.  Moreover, Avant's sole basis for venue rests on an argument that contradicts settled law that "a distributor's place of business cannot establish venue for its supplier" under § 1400(b).  *EMED Techs.*, 2018 WL 2544564, at *2.  The proper result in these circumstances is dismissal, not transfer.  *See Seville*, 53 F.4th at 896 ("[W]here the plaintiff's attorney reasonably could have foreseen that the forum in

which the suit was filed was improper, transfer is normally unwarranted.") (citation omitted); *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382-1383 (Fed. Cir. 2019) (affirming dismissal for improper venue where plaintiff "disregard[ed] controlling law, here *Cray* and *ZTE*" and "failed to plead *any* facts showing [defendant] had a regular and established place of business physically located in the Western District of Washington").

**B.    If Not Dismissed Outright, The Court Should Transfer This Case To The Northern District Of California.**

If the Court nevertheless finds that venue in the Eastern District of Texas is proper or that dismissal is not appropriate, it should transfer this case to the Northern District of California. A defendant is entitled to transfer under 28 U.S.C. § 1404(a) if it shows (1) that the suit "might have been brought" in the proposed transferee district and (2) the "transferee venue is clearly more convenient" than the district in which suit was filed. *Volkswagen II*, 545 F.3d at 312, 315. In determining relative "convenience," courts weigh several "private" and "public" interest factors. *Id*. at 315. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citation omitted) ("*Volkswagen I*"). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id*.; *see also TikTok*, 85 F.4th at 358.

Here, the case could have been brought in the Northern District of California, and the private and public interest factors strongly favor transfer to the Northern District of California. The

Northern District of California is clearly more convenient for the parties and witnesses because it is where the accused products were designed and developed, and where witnesses and evidence for both parties are located.  By contrast, Apple is not aware of any witnesses or evidence located in this District, and the only apparent connection to this District is Avant's litigation-driven incorporation at an address in this District, which is entitled to no weight in the transfer analysis.

> ### 1.    Avant could have brought this suit in the Northern District of California.

Apple is incorporated in California and maintains its headquarters in Cupertino, California. *See* Dkt. 1 ¶ 1. Apple thus resides in the Northern District of California for venue purposes. *See TC Heartland*, 581 U.S. at 267-68, 270; 28 U.S.C. § 1400(b).  The Northern District of California therefore is a district in which this case "might have been brought" under 28 U.S.C. § 1404(a).

> ### 2.    The private interest factors overwhelmingly favor transfer.

> #### a.    The cost of attendance for willing witnesses strongly favors transfer.

The Northern District of California is a far more convenient district for the witnesses in this case.  As "[t]he convenience of the witnesses is probably the single most important factor in transfer analysis," this factor heavily weighs in favor of transfer.  *In re Genentech, Inc*., 566 F.3d 1338, 1343-1345 (Fed. Cir. 2009) ("Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer."); *see also In re Google Inc*., No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (holding that "district court did not properly accord this factor its appropriate weight under the law" where "vast majority of [defendant's] employees—in particular those responsible for projects relating to the accused products—work and reside in the Northern District of California").

Apple's witnesses are based in the Northern District of California and would be required to travel more than 1,800 miles for trial if this case is not transferred.  *See* Ex. 13.  Apple's engineers working on the design and development of the accused Find My feature and related features of the Home app are primarily located at Apple's headquarters in Cupertino, California, while none resides in Texas.  Movva Decl. ¶¶ 4-5 ██████████████████████████████████ ██████████████████████████; Warren Decl. ¶¶ 4-5 (██████████████████████████████ ████████████████████████████.[2]  Likewise, Apple's central finance, marketing and IP transactions teams are also primarily located in California, and particularly Cupertino.  Anderson Decl. ¶ 4; Williams Decl. ¶ 4; Spevak Decl. ¶ 3.  The members of these aforementioned teams responsible for the "design, development, functioning, marketing, and sales of the accused products" are willing "potential witnesses" Apple would bring to trial.  *In re Honeywell Int'l Inc*., No. 2023-152, 2024 WL 302397, at *2 (Fed. Cir. Jan. 26, 2024); s*ee also In re Netflix, Inc*., No. 2022-110, 2022 WL 167470, at *2 (Fed. Cir. Jan. 19, 2022) (weighing "[defendant's] identification of 21 potential witnesses resident in that district—product and engineering team employees who wrote articles about the accused technology…as well as an employee in Northern California knowledgeable about [defendant's] finances" in favor of transfer).  That travel would impose a substantial expense and disruption in their professional and personal lives, resulting in the precise inconveniences § 1404(a) is designed to address.  *See In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021) ("*Apple II*"); *Volkswagen I*, 371 F.3d at 204-05.  The fact that these are party witnesses does not diminish the relevance of their hardship under this factor.

---

[2] While there are also a handful of Apple engineers who work on the Find My feature located in ████████████████████████ the vast majority of the individuals involved are based in and around Apple's headquarters in Cupertino, California.  Movva Decl. ¶ 4.  The presence of these engineers outside the Northern District of California does not alter the analysis, particularly given that none are located in the Eastern District of Texas.  *Id.*

*See Juniper*, 14 F.4th at 1319-20 ("[T]he convenience-to-the-witness factor is [not] attenuated when the witnesses are employees of the party calling them.") (citation omitted).

By contrast, if the case is transferred to the Northern District of California, the cost and inconvenience on witnesses will be greatly reduced given that they may attend trial in their home district. In fact, Avant's corporate parent Anjay Ventures is also a California entity, and Avant's managing director Deepak Sharma lives and works in the Northern District of California. *See* Exs. 2-4. Thus, this Court's "analysis of this factor should [] end[] with its recognition that 'the bulk of relevant witnesses [are] in [the Northern District of California].'" *TikTok*, 85 F.4th at 362 (citation omitted); *Apple II*, 2021 WL 5291804, at *3 (factor weighs strongly in favor of transfer where "there are several witnesses located in the transferee forum and none in the transferor forum") (citation omitted).

> **b.    The relative ease of access to sources of proof strongly favors transfer.**

The relevant sources of proof from both parties are located primarily in the Northern District of California, which strongly favors transfer. *Genentech,* 566 F.3d at 1346 (factor weighs in favor of transfer because "[k]eeping this case in the Eastern District of Texas will impose a significant and unnecessary burden on the petitioners to transport documents that would not be incurred if the case were to proceed in the Northern District of California"). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) ("*Apple I*") (focusing on the source code and records relating to the research, design, marketing, sales and financial information for the accused products) (quoting *Genentech*, 566 F.3d at 1345). Here, Apple's sources of proof are primarily located in and around Apple's headquarters in the Northern District of California, and

none are in this District.

Like Apple's witnesses (*see supra* Section V.B.2.a), ████████████████████
██████████████████████████████████████████████████████████████████████

████████████████ Movva Decl. ¶ 6; Warren Decl. ¶ 6. ████████████████████
██████████████████████████████████████████████████████████████████████

████████████████████████████████████ Anderson Decl. ¶ 5; Spevak Decl. ¶ 5;

Williams Decl. ¶ 6. ██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████. Movva Decl. ¶ 6; Warren Decl. ¶ 6; Anderson Decl. ¶ 5; Spevak Decl.

¶ 5; Williams Decl. ¶ 6. ██████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████. *See TikTok*, 85 F.4th at

359; Movva Decl. ¶ 6; Warren Decl. ¶ 6; Anderson Decl. ¶ 5; Spevak Decl. ¶ 5; Williams Decl. ¶

6.

Avant also likely has relevant evidence located in the Northern District of California.

Because Avant's managing director Deepak Sharma lives and works in the Northern District of

California, it is likely that he is in possession of or has access to materials relevant to this litigation.

*See* Exs. 2-4.  By contrast, there does not appear to be any relevant evidence located in the Eastern

District of Texas.  For example, the technology claimed in the asserted patents was developed by

a Spanish company, and asserted patents identify their sole named inventor as a resident of Madrid,

Spain.  The only apparent connection to the Eastern District of Texas is Avant's incorporation at

an address in this District less than three months before Avant filed its first lawsuit in this District.

Avant's litigation-driven presence does not create any genuine ties to this District relevant to the transfer analysis. *See Juniper*, 14 F.4th at 1320-21 (granting mandamus to direct transfer where plaintiff had only a litigation-driven pre-filing presence in the District); *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1377 (Fed. Cir. 2021) ("[T]he Supreme Court and [the Federal Circuit] have repeatedly assessed the propriety of venue by disregarding manipulative activities of the parties.").

Given its proximity to evidence from both parties, no other judicial district bears a stronger connection to this case than the Northern District of California. This factor therefore weighs heavily in favor of transfer. *Apple I*, 979 F.3d at 1340 (relying on Apple's "significant amount of relevant information in NDCA, including the relevant source code, Apple records relating to the research and design of the accused products, and marketing, sales, and financial information for the accused products"); *Genentech*, 566 F.3d at 1345.

        c.     **Compulsory process to secure the attendance of witnesses is neutral or else may weigh in favor of transfer.**

Given that neither the asserted patents nor the accused technology was developed in the Eastern District of Texas, this District provides no advantage in terms of compulsory process over witnesses. Apple is not aware of any witness who is within the subpoena power of the Court. *See* Fed. R. Civ. P. 45(c) (granting compulsory process to secure the attendance of witnesses "within 100 miles of where the person resides, is employed, or regularly transacts business in person"). By contrast, witnesses for Apple and at least one witness for Avant reside within the Northern District of California, such that a court in that district could compel their attendance at trial if any unwilling witnesses were sought for trial. This factor is thus neutral or weighs in favor of transfer to the Northern District of California. *Genentech*, 566 F.3d at 1345 (concluding that the compulsory process factor favored transfer where "there [were] a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be

compelled to appear in the Eastern District of Texas").

**d.    Any remaining "practical problems" are neutral.**

The "practical problems" catch-all factor is neutral because no relevant "problems" of judicial economy exist.  Any progress in these cases is minimal and, regardless, irrelevant to this analysis.  *See In re TracFone Wireless, Inc.*, 848 F. App'x 899, 901 (Fed. Cir. 2021).

**3.    The public interest factors overwhelmingly favor transfer.**

**a.    The local interest factor strongly favors transfer.**

The Northern District of California has a greater local interest in the outcome of this case than the Eastern District of Texas.  The local interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'"  *Apple I*, 979 F.3d at 1345.  As explained above, all the events that gave rise to the suit occurred in the Northern District of California (and none in this District).  *See Samsung*, 2 F.4th at 1380 (finding factor weighed in favor of transfer when the "relevant events leading to the infringement claims here took place largely in Northern California, and not at all in the [transferor forum]").

In a patent infringement action, the relevant events are undoubtedly where the accused products were designed and developed.  *See, e.g.*, *Samsung*, 2 F.4th at 1380 ("It is undisputed that [certain relevant parties] researched, designed, and developed most of those applications [on which the accused products run] in Northern California. These are significant factors that give the Northern District of California a legitimate interest in adjudicating the cases 'at home.'") (citation omitted).  And the design and development of the accused technology here occurred primarily in the transferee forum.  *See Clarke*, 94 F.4th at 511; Movva Decl. ¶¶ 4-5; Warren Decl. ¶¶ 4-5. "[B]ecause the accused products were designed, developed and tested in [the Northern District of California]; and because the lawsuit calls into question the work and reputation of several

28

individuals residing in [the Northern District of California], this factor weighs in favor of transfer." *Apple I*, 979 F.3d at 1345 (internal citation omitted).  Moreover, Avant's own connections to the Northern District of California bolster the transferee forum's interest in the outcome of this case. Avant's ultimate parent is a California corporation, and Avant's managing member works and resides in the Northern District of California.  *See* Ex. 3, 4.

By contrast, the Eastern District of Texas has no meaningful interest in this case.  The technology underlying the asserted patents was not developed in the Eastern District of Texas. And Avant's incorporation in the District—just three months before Avant began filing lawsuits— is purely litigation-driven and completely unrelated to "events that gave rise to [this] suit," and thus not a relevant consideration in the transfer analysis.  *See Juniper*, 14 F.4th at 1320-21 (emphasis omitted); *Samsung*, 2 F.4th at 1377; *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011).

Given the balance of interests between the Northern District of California and the Eastern District of Texas, this factor weighs strongly in favor of transfer.

> **b.    Familiarity with governing law and conflicts of law factors are neutral.**

Because this case is governed by federal patent law, the familiarity with the governing law and conflicts of laws factors are neutral.  *See In re TS Tech. USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008) (en banc).

> **c.    The court congestion factor is neutral**

The court congestion factor is "the 'most speculative' of the factors bearing on the transfer decision."  *Juniper*, 14 F.4th at 1322 (citation omitted).  Over the past five years, this District's median time to trial has been approximately 8 months quicker than the Northern District of California.  Exs. 14, 15.  However, this slightly faster time-to-trial is not consequential given that

Avant is a non-practicing entity and is not seeking injunctive relief. *In re Google, Inc.*, 58 F.4th 1379, 1383 (Fed. Cir. 2023) (finding court congestion neutral because patent owner "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other cases, might add urgency to case resolution). Accordingly, this factor is neutral.

* * *

The private and public interest factors demonstrate that the Northern District of California is clearly more convenient than the Eastern District of Texas. Given that this case has a strong connection to the Northern District of California and no real ties to the Eastern District of Texas, this case presents exactly the situation that transfer under § 1404(a) is intended to address. *See Honeywell*, 2024 WL 302397, at *10 (holding that "the decision to deny transfer was a 'clear abuse of discretion leading to a patently erroneous result'" where "several important transfer factors favor transfer, while nothing of significance ties this case to the Western District of Texas"); *In re Samsung Elecs. Co.*, No. 2023-146, 2023 WL 8642711, at *7 (Fed. Cir. Dec. 2023) ("Because several factors favor NDCA and 'not a single relevant factor favors [plaintiff's] chosen venue,' … we grant mandamus and direct the district court to transfer to NDCA.").

## VI.    CONCLUSION

The Court should dismiss this case for improper venue or, at a minimum, transfer it to the Northern District of California.

Dated: November 22, 2024

Respectfully submitted,

/s/ *Melissa R. Smith*
Joseph J. Mueller (*pro hac vice*)
Andrew J. Danford (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
joseph.mueller@wilmerhale.com
andrew.danford@wilmerhale.com

Mark D. Selwyn (*pro hac vice*)
Joseph F. Haag (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000
mark.selwyn@wilmerhale.com
joseph.haag@wilmerhale.com

Melissa R. Smith
Texas State Bar No. 24001351
GILLAM & SMITH LLP
303 S. Washington Ave.
Marshall, TX 75670
(903) 934-8450
melissa@gillamsmithlaw.com

*Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 22, 2024, to all counsel of record via email.

*/s/ Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), counsel for Defendant met and conferred with counsel for Plaintiff, and counsel for Plaintiff indicated that Plaintiff is opposed to the relief sought by this Motion.

*/s/ Melissa R. Smith*
Melissa R. Smith