# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| AVANT LOCATION TECHNOLOGIES LLC,<br><br>     Plaintiff,<br><br> v.<br><br>APPLE INC.,<br><br>     Defendant. | Civil Action No. 2:24-CV-0757-JRG (LEAD CASE)<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA (DKT. 33)**

# TABLE OF CONTENTS[1]

I.   AVANT HAS FAILED TO ESTABLISH VENUE ............................................................. 1

    A.   Apple Does Not Hold Out Best Buy's Apple Shops As Its Places Of Business. ................................................................................................................ 2

    B.   Apple Does Not Control Best Buy's Apple Shops. ............................................... 3

    C.   The Presence Of Apple's Employees Does Not Support Venue, And Avant's Assertion That Best Buy's Employees Are Apple's Agents Is Incorrect. ................................................................................................................ 4

    D.   Best Buy's Apple Shops Differ From Apple's Own Retail Locations. .................. 5

    E.   No Further Venue Discovery Is Warranted. .......................................................... 6

II.  ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA ...................................................................... 6

    A.   The Private Interest Factors Strongly Favor Transfer. ........................................... 6

    B.   The Public Interest Factors Strongly Favor Transfer. .......................................... 10

III. CONCLUSION ................................................................................................................ 10

---

[1] Exhibits 1 to 15 are references to Dkts. 33-9 to 33-24, and Exhibit 16 is attached to the Declaration of Andrew Danford filed in support of this reply brief.

# TABLE OF AUTHORITIES

Page(s)

## CASES

*4WEB, Inc. v. NuVasive, Inc.*,
　　No. 23-CV-00192-JRG, 2024 WL 1932416 (E.D. Tex. May 2, 2024) ..............................5

*AptusTech LLC v. Trimfoot Co.*,
　　No. 4:19-CV-00133-ALM, 2020 WL 1190070 (E.D. Tex. Mar. 12, 2020) ......................2

*Bianco v. Globus Med., Inc.*,
　　No. 2:12-CV-147-WCB, 2014 WL 61071 (E.D. Tex. Jan. 6, 2014) ..................................9

*Blitzsafe Texas LLC v. Bayerische Motoren Werke AG*,
　　No. 2:17-CV-00418-JRG, 2018 WL 4849345 (E.D. Tex. Sept. 6, 2018) ......................2, 3

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
　　No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018)......................1

*Evolutionary Intel. LLC v. Yelp, Inc.*,
　　No. 6:12-cv-00794, 2013 WL 12157562 (E.D. Tex. July 21, 2013) ..................................8

*Fractus, S.A. v. ZTE Corp.*,
　　No. 2:17-CV-00561-JRG, 2018 WL 11363369 (E.D. Tex. Sept. 28, 2018) ..................4, 5

*In re Clarke*,
　　94 F.4th 502 (5th Cir. 2024) ..............................................................................................10

*In re Cray Inc.*,
　　871 F.3d 1355 (Fed. Cir. 2017)............................................................................................6

*In re DISH Network L.L.C.*,
　　No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)..............................................10

*In re Genentech, Inc.*,
　　566 F.3d 1338 (Fed. Cir. 2009).......................................................................................7, 9

*In re Google LLC*,
　　No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) .............................................8

*In re Google LLC*,
　　58 F.4th 1379 (Fed. Cir. 2023) .........................................................................................10

*In re Honeywell Int'l Inc.*,
　　No. 2023-152, 2024 WL 302397 (Fed. Cir. Jan. 26, 2024)................................................7

*In re Juniper Networks, Inc.*,
　　14 F.4th 1313 (Fed. Cir. 2021) ......................................................................................1, 6

*In re Planned Parenthood Fed'n of Am.*,
    52 F.4th 625 (5th Cir. 2022) ..........................................................................................10

*In re Samsung Elecs. Co.*,
    2 F.4th 1371 (Fed. Cir. 2021) ........................................................................................10

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ............................................................................................7

*In re Volkswagen Grp. of Am., Inc.*,
    28 F.4th 1203 (Fed. Cir. 2022) ...............................................................................3, 4, 8

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018)........................................................................................4

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*,
    No. SA CV 17-1748-DOC (JDEx),
    2018 WL 4963129 (C.D. Cal. June 22, 2018) .............................................................1, 2

*Tinnus Enter., LLC v. Telebrands Corp.*,
    No. 6:17-CV-00170-RWS, 2018 WL 4524119 (E.D. Tex. May 1, 2018)...........................4

*Wireless Protocol Innovations, Inc. v. TCT Mobile (US) Inc.*,
    No. 6:15-CV-00918-KNM, 2023 WL 4626659 (E.D. Tex. July 19, 2023)........................5

Avant has failed to carry its burden to establish venue at least because Apple does not own or control any space in Best Buy's Apple Shops. Avant relies on Apple's role in setting the "look and feel" of Apple Shops, which are the section of Best Buy's stores where Best Buy sells Apple products. But Avant ignores that Best Buy owns all merchandise and fixtures in the Apple Shops and controls their day-to-day operation. While Apple has employees who may work within Apple Shops, their duties are not the same as Apple's employees who work in Apple Stores—they do not complete sale transactions, have access to cash registers or locked inventory, set prices, or repair products (Dkt. 33-3 ("Calhoun Jemmings Decl.") ¶¶ 7-10). Nor do they exercise possession or control over Best Buy's Apple Shops. Indeed, Apple's employees can be removed and Apple Shops can be closed at Best Buy's discretion. At most, Avant has alleged that Apple controls its brand within Best Buy's Apple Shops by designing the layout and setting standards for the use of Apple's trademarks. That is insufficient for venue under controlling precedent.

Alternatively, this case should be transferred to the Northern District of California, which is clearly more convenient given the location of relevant sources of proof and key witnesses. Avant does not deny that the Northern District of California is home to the facts and witnesses central to this case, including Avant's managing director. Instead, Avant points to supposed witnesses whose connection is at best contrived "to claim a presence in the district for purposes of litigation," which is not a basis to avoid transfer. *See In re Juniper Networks, Inc.,* 14 F.4th 1313, 1320-21 (Fed. Cir. 2021). Indeed, Avant identified none of these "witnesses" in its initial disclosures.

I.   **AVANT HAS FAILED TO ESTABLISH VENUE**

Avant's venue allegations conflict with the well-established principle that locations owned and operated by a third-party reseller (like Best Buy) do not establish venue as to a supplier (like Apple). *See EMED Techs. Corp. v. Repro-Med Sys., Inc.*, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018) (collecting cases); *Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*, 2018 WL

1

4963129, at *7 (C.D. Cal. June 22, 2018) ("Samsung Experience Shops" in Best Buy locations insufficient for venue as to Samsung). Avant's opposition does not engage with those authorities, let alone provide a sound basis for reaching a different result here.

### A. Apple Does Not Hold Out Best Buy's Apple Shops As Its Places Of Business.

Avant's opposition argues that Apple holds out Best Buy's Apple Shops as Apple's places of business by listing Best Buy locations on Apple's website and by designing Apple Shops "to look like Apple Retail Stores." Dkt. 59 ("Opp'n") at 14-15. Neither assertion has any merit.

Apple's website clearly identifies "Apple Shops" as locations contained "within select Apple resellers and other retail stores" and describes those locations using only the name of the third-party reseller—e.g., "Best Buy." Dkt. 1 ¶ 4. Nothing about Apple's website suggests that those third-party locations are places of business of Apple. *See AptusTech LLC v. Trimfoot Co.*, 2020 WL 1190070, at *5 (E.D. Tex. Mar. 12, 2020) ("[D]irecting customers to [an independent retailer's] location from the defendant's website is insufficient to establish that the location is 'of the defendant.'"). Avant attempts to distinguish *AptusTech* on the basis that the defendant there "did not provide signage, furniture, or merchandising guidelines, had 'very little' input about product placement, and did not 'dictate any type of display.'" Opp'n 15. But those factors at most demonstrate Apple's control over its trademarks, not control over Best Buy's Apple Shops. *See infra* pp. 3-4. The defendant's website in *AptusTech* is materially indistinguishable from Apple's website here, since both clearly identify all locations in the District as third-party resellers.

Avant argues that "Apple has ratified the Apple Shops as its own" through their name (i.e., "Apple Shop") and appearance designed "to resemble an Apple Retail Store[.]" Opp'n 15 (citing *Blitzsafe Texas LLC v. Bayerische Motoren Werke AG*, 2018 WL 4849345 (E.D. Tex. Sept. 6, 2018), *vacated sub nom. Blitzsafe Texas LLC v. Mitsubishi Elec. Corp.*, 2019 WL 3494359 (E.D.

2

Tex. Aug. 1, 2019)). However, the factors that supported venue in *Blitzsafe* are not present here.[2] For example, while the BMW dealerships in *Blitzsafe* used the BMW logo with "no reservations such as 'authorized dealer' or 'exclusive distributor,'" 2018 WL 4849345, at *8, both Apple's and Best Buy's websites clearly identify Best Buy as an "Apple Authorized Reseller[]" and "Apple Authorized Service Provider." Dkt. 1 ¶¶ 4, 8. Best Buy also uses Apple's branding and fixtures alongside ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which dispels any impression that Best Buy's Apple Shops are Apple's places of business. Ex. 8 at Exhibit A; *see also* Ex. 12 at 3-4; Dkt. 33-1 ("Dockendorf Decl.") ¶ 5 (showing Windows logo behind Apple Shop).

### B.     Apple Does Not Control Best Buy's Apple Shops.

Avant argues at length that Apple's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ demonstrate control over Best Buy's Apple Shops. Opp'n 4-7, 16-18. However, those contractual provisions simply reflect Apple's efforts to maintain its trademarks and brand, which are insufficient to establish venue. *See Volkswagen*, 28 F.4th at 1211-13 (standards for "appearance and use of signs and brand logos" insufficient for venue); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

Avant ignores Best Buy's control over the Apple Shops. Best Buy—not Apple—ultimately determines whether (if at all) to have an Apple Shop and where to locate it within Best Buy's stores subject to design considerations. Dkt. 33 ("Mot.") at 11-13.[3] Best Buy hires its own employees,

---

[2] The Federal Circuit later found venue improper in similar circumstances and called into question *Blitzsafe*'s holding. *See In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1207 (Fed. Cir. 2022).
[3] Avant focuses on provisions in Apple's agreements with Best Buy governing Apple's ▮▮▮▮▮▮ Opp'n 4-5. However, these provisions make clear that ▮▮▮▮▮▮▮▮▮▮

3

determines the hours of operation, owns and maintains fixtures, manages inventory, set prices, restocks the Apple Shops, and makes all sales in its stores. *Id.* Best Buy's actions—not Apple's—mirror those the Court found persuasive of control in *Tinnus Enterprises, LLC v. Telebrands Corp.*, 2018 WL 4524119, at *1-2 (E.D. Tex. May 1, 2018) (defendant contracted with third parties to "move[] products from the back room to the store shelves" and to "monitor, clean, restock, and affix price signage"). Best Buy's ability to unilaterally close stores evidences its control—and Apple's lack of control—over Apple Shops. *See In re ZTE (USA) Inc.*, 890 F.3d 1008, 1015 (Fed. Cir. 2018). Contrary to Avant's argument, Apple's contractual agreement to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Instead, these provisions reflect Apple's protection of its brand and are insufficient to establish venue. *See Volkswagen*, 28 F.4th at 1211 (contractual provisions related to sales, such as minimum inventory, did not "evidence any control over the sales process itself").

        **C.**    **The Presence Of Apple's Employees Does Not Support Venue, And Avant's Assertion That Best Buy's Employees Are Apple's Agents Is Incorrect.**

The limited presence of Apple's employees in Best Buy's Apple Shops does not support venue. At the time that the complaint was filed,[4] only one or two Apple employees were assigned to a particular Best Buy location, and those Apple employees were not present during all business hours and did not supplant the role of Best Buy employees. *See* Calhoun Jemmings Decl. ¶¶ 5-13; *Fractus, S.A. v. ZTE Corp.*, 2018 WL 11363369, at *2 (E.D. Tex. Sept. 28, 2018) (holding that two employees of defendant's working part time three to four days per week in visitor space on

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As a result, neither provision evidences any control.
[4] Apple disclosed that its staffing structure changed in November 2024 in order to provide complete and accurate information, but agrees that venue is assessed at the time of the complaint.

4

location was "insufficient on its own to convert" it into the defendant's place of business).

Critically, Avant has not identified any basis to assert that Apple's employees exercise possession or control over Best Buy's Apple Shops. Avant asserts that Apple's employees "conduct Apple's business" while at Best Buy by "educating [Best Buy employees and customers] about Apple's products, advocating for Apple's brand, and helping customers choose an Apple product." Opp'n 20. But conducting the defendant's business is insufficient for venue in the absence of the defendant's possession or control over the place in which those employees work. *See 4WEB, Inc. v. NuVasive, Inc.*, 2024 WL 1932416, at *2-4 (E.D. Tex. May 2, 2024).

Avant alternatively asserts that Best Buy's employees are supposedly Apple's "agents." Opp'n 21-22. But there is no factual or legal basis for that assertion. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Contrary to Avant's assertion, the mere fact that Best Buy's employees are trained by Apple and must be knowledgeable about Apple's products does not make them Apple's agents. *See Volkswagen*, 28 F.4th at 1211 (requiring "mandatory training sessions" and "training certifications" for dealership employees did not make them agents of distributor). Avant has failed to allege that Apple has any "interim control" over Best Buy's employees, which is necessary to establish an agency relationship. *Id.* at 1209; *Wireless Protocol Innovations, Inc. v. TCT Mobile (US) Inc.*, 2023 WL 4626659, at *12 (E.D. Tex. July 19, 2023); *see* Calhoun Jemmings Decl. ¶ 7 ("Apple employees in Best Buy's stores did not exercise any control over Best Buy's employees.").

### D.     Best Buy's Apple Shops Differ From Apple's Own Retail Locations.

Avant does not dispute that Apple performs different activities for its Apple Stores than for Best Buy's Apple Shops, including leasing storefronts, owning merchandise, controlling inventory, providing security, setting hours, making sales, and repairing Apple products. *Compare* Mot. 20-21 *with* Opp'n 22-23. Avant argues that customers perceive Best Buy's Apple Shops as

5

"no different" from Apple's own retail stores, Opp'n 23, but cites no actual evidence of customer perceptions to support those assertions. Avant also cites no authority that alleged customer perceptions are relevant to this factor, which focuses on the nature of the place and the defendant's activities associated with it. *See In re Cray Inc.*, 871 F.3d 1355, 1364 (Fed. Cir. 2017).

### E. No Further Venue Discovery Is Warranted.

Apple has already provided extensive discovery relating to Avant's venue allegations, including all agreements with Best Buy relating to Apple Shops and three witness declarations addressing Apple's relationship with Best Buy. Avant should have sought any further discovery that it believes necessary before briefing this motion. The Court has a complete record on which it can evaluate Avant's venue allegations, and no further venue discovery is warranted.

## II. ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

Even if the Court were not inclined to dismiss this case, which is the appropriate remedy, Mot. 21-22, it should at minimum transfer the case because Avant has failed to identify any connection between this District and the facts of this case. Avant does not dispute that the relevant issues forming the basis of its allegations arise out of the Northern District of California. Rather, it points to alleged "witnesses" and "sources of proof" that, like Avant's incorporation in this District, appear to be purely litigation-driven, and completely unrelated to "the events that gave rise to [this] suit," rendering them irrelevant to the transfer analysis. *Juniper*, 14 F.4th at 1320-21.

### A. The Private Interest Factors Strongly Favor Transfer.

*Cost of attendance for willing witnesses*. Avant does not dispute that the Northern District of California is much more convenient for Apple's witnesses than this District. Apple submitted declarations from five California-based witnesses with relevant information about the design, development, marketing, licenses, and finances for the accused Find My feature. Mot. 24. By

6

contrast, Apple has no witnesses located in this District. Mot. 8. Contrary to Avant's assertion, Apple also represented that its identified California employees "are willing 'potential witnesses' Apple would bring to trial." Mot. 24 (citing *In re Honeywell Int'l Inc.*, 2024 WL 302397, at *2 (Fed. Cir. Jan. 26, 2024)). At this early stage, Apple need not commit to which specific witnesses will attend trial. *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).

Moreover, Avant has failed to identify a single relevant witness for whom the Northern District of California would not be convenient. While Avant asserts that this District is convenient for Avant's Managing Director Deepak Sharma, Avant does not deny that he lives a short drive from the court in the Northern District of California and that he conducts his work for Avant from his home. *See* Mot. 25. Avant's assertions regarding its other alleged employees and consultants are equally unavailing, and Avant omitted all those names from its initial disclosures served less than three weeks before Avant filed its opposition. *See* Ex. 16 at 4-5. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ In any event, the convenience of this District for Mr. Sharma and Avant's other employees, consultants, or interns does not outweigh the much greater convenience of the Northern District of California for Apple's witnesses and its relative convenience for Mr. Sharma. *See In re TikTok, Inc.*, 85 F.4th 352, 362 (5th Cir. 2023).

***Relative ease of access to sources of proof.*** The Northern District of California has easier

7

access to sources of proof than this District. Contrary to Avant's assertion, Apple did not provide only "vague and unsupported assertions" concerning the locations of sources of proof. Opp'n 24. Five Apple employees attested ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████ Mot. 8, 24; *see also Evolutionary Intel. LLC v. Yelp, Inc.*, 2013 WL 12157562, at *4 (E.D. Tex. July 21, 2013) (general identification of "development documents and source code" and location of documents for engineering, sales, and other groups supported transfer). The fact that these records are ████████████████████

████████████████████████████████████████████████. As Apple's witnesses explained, Mot. 26, █████████████████████████████

████ and, as discussed above, knowledgeable custodians with access to these records are located in the Northern District of California, which favors transfer. *See TikTok*, 85 F.4th at 359; *In re Google LLC*, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

While Avant asserts that its records are in this District, Avant does not deny that its Managing Director, Mr. Sharma—the only Avant witness identified as possessing discoverable information (Ex. 16 at 4-5)—lives and works in the Northern District of California, meaning that Avant's sources of proof are accessible there. As discussed above, Avant has not established the relevance of the records it claims as "sources of proof" located in the District, namely documents relating to ████████████████████████████████████████████████████████

██████████████████████████████████████████████ Opp'n 23-24.

Avant's alleged third-party sources of proof also do not change the result. As to RFCyber, Jawbone, and AGIS (which Avant asserts may have evidence of Apple's licensing practices), Avant offers no evidence to support the relevance of these parties' documents or their location,

8

alleging that they are "presumably located here." Opp'n 25. These attorney statements carry no weight. *See Bianco v. Globus Med., Inc.*, 2014 WL 61071, *3 (E.D. Tex. Jan. 6, 2014). It is also not clear why Avant needs discovery from these third parties, given that information about Apple's licenses could be obtained from Apple. As to Afirma, neither forum is more or less convenient since Avant acknowledges Afirma's documents are in Spain. *See Genentech*, 566 F.3d at 1345.

***Compulsory process***. Avant's attempts to identify witnesses subject to this Court's subpoena power fall short. *See* Opp'n 25-26. First, Avant relies on conclusory and speculative attorney statements regarding the relevance of Apple's settlements. *See id*. For example, the *AGIS*, *RFCyber*, and *Jawbone* lawsuits against Apple concerned technologies that are unrelated to what is accused in this case, and Avant has identified no reason to why these agreements would have any relevance here. *See Jawbone Innovations, LLC v. Apple Inc.*, No. 21-cv-984, Dkt. 1. ¶¶ 9-18 (W.D. Tex. Sept. 23, 2021) (noise-suppression technology); *RFCyber Corp. v. Apple, Inc.*, No. 21-cv-916, Dkt. 1 ¶¶ 7-12 (W.D. Tex. Sept. 7, 2021) (contactless payments); *AGIS Software Dev. LLC v. Apple Inc.*, No. 17-cv-516, Dkt. 1 ¶¶ 6-9 (E.D. Tex. June 21, 2017) (digital networks and remote communications). And even if relevant, Avant has not explained why this information could not be obtained from Apple directly. Second, Avant states that it may seek information on ███████████████████████████████████████████████ Opp'n 25. But any such subpoena would presumably be directed to Samsung Electronics America (not any individual who works there), which has its principal place of business in New Jersey. *See Avant Location Techs. v. Samsung Elecs. Co.*, No. 24-cv-133, Dkt. 31 ¶ 3 (E.D. Tex. July 29, 2024). This factor is, at most, neutral given Avant's failure to identify third-party witnesses with relevant information in this District.

***Practical problems***. Judicial economy considerations cannot "undermine the clear case for

9

transfer in light of the imbalance on the other factors." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023); *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021). Avant points to the co-pending *ecobee* case, but that case involves a different defendant and entirely different accused products (smart thermostats). *See* Dkt. 56 (first amended complaint against ecobee) (Dec. 20, 2024). Where, as here, Avant's other pending case involves diverging issues with respect to infringement and damages, judicial economy is insufficient to outweigh other factors favoring transfer. *See In re Planned Parenthood Fed'n of Am.*, 52 F.4th 625, 632 n.5 (5th Cir. 2022); *In re DISH Network L.L.C.*, 2021 WL 4911981, at *4 (Fed. Cir. Oct. 21, 2021).

  **B. The Public Interest Factors Strongly Favor Transfer.**

*Local interest*. This factor considers "the significant connections between a particular venue and the events that gave rise to a suit," not "the parties' significant connections to each forum." *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024). Avant does not dispute that Apple's design and development of the accused products occurred in the Northern District of California, Opp'n 29; Mot. 8, 28-29, which is what is relevant to this factor. Avant's arguments concerning the parties' presence "in Texas" are immaterial because Avant has not identified any connection to the facts giving rise to this case. In addition, Avant's arguments focus on Apple's connection with the Western District of Texas, not this District. Opp'n 29. This factor strongly favors transfer.

*Court congestion*. Avant does not dispute that as a non-practicing entity, this case lacks urgency. Opp'n 29. Despite the slightly faster time to trial here, this factor is neutral. Mot. 29-30. The same is true for the familiarity with governing law and conflicts of law factors, which Avant does not argue support transfer. *See* Opp'n 30.

## III. CONCLUSION

  This case should be dismissed or, alternatively, transferred to the Northern District of California.

Dated: January 10, 2025                                    Respectfully submitted,

/s/ *Andrew J. Danford*
Joseph J. Mueller (*pro hac vice*)
Andrew J. Danford (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
joseph.mueller@wilmerhale.com
andrew.danford@wilmerhale.com

Mark D. Selwyn (*pro hac vice*)
Joseph F. Haag (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000
mark.selwyn@wilmerhale.com
joseph.haag@wilmerhale.com

Melissa R. Smith
Texas State Bar No. 24001351
GILLAM & SMITH LLP
303 S. Washington Ave.
Marshall, TX 75670
(903) 934-8450
melissa@gillamsmithlaw.com

*Attorneys for Defendant Apple Inc.*



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 10, 2025, to all counsel of record via email.

>  /s/ Melissa R. Smith
>  Melissa R. Smith

12